# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DEANNA L. MILLER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:08-cv-1373-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Deanna L. Miller brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Procedural History

Plaintiff filed an application under Title XVI for SSI benefits on June 30, 2004, and applications for a period of disability and DIB under Title II on July 14, 2004. (Tr. 14, 50-51). Plaintiff alleges she has been unable to work since January 1, 2004[1] due to osteoarthrosis and related disorders, affective/mood disorders, and left knee osteochondral defect. (Tr. 50-51, 417). Plaintiff's applications were denied initially and also upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 15, 2005. (Tr. 35). Plaintiff's case was heard by

---

[1]During the July 20, 2006 hearing, Plaintiff's alleged onset date of disability was amended to January 11, 2005. (Tr. 416).

ALJ Michael R. Swan on July 20, 2006. (Tr. 22, 414-46). In his September 19, 2006 decision, the ALJ determined that Plaintiff was not eligible for a period of disability, DIB, or SSI because she failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform the exertional demands of sedentary work. (Tr. 11-21). Plaintiff requested a review of the ALJ's decision on October 25, 2006. (Tr. 10, 412). The Appeals Council denied Plaintiff's request on June 26, 2008. (Tr. 6-8). Within the required time limitations, Plaintiff filed this civil action.

Plaintiff was born on November 29, 1975 and has a seventh grade education. (Tr. 64, 422-23). Plaintiff had previously worked as a telemarketer, food delivery worker, and fast food worker. (Tr. 99, 423). Plaintiff had a slipped capital femoral epiphysis in 1987 and underwent a pin fixation of her hip with Dr. Richard C. Burnside at that time. (Tr. 128). The pins were later removed and when she was seen in 1993, Dr. Burnside noted Plaintiff was walking without a limp. (*Id*.).

In July 2000, Plaintiff saw Dr. Burnside at the Orthopaedic Center complaining of pain in her hip. On exam, Dr. Burnside noted Plaintiff had excellent range of motion in her hip, some deformity compatible with a slipped capital femoral epiphysis, but had a good joint space. From his standpoint, Plaintiff could benefit by taking Advil or ibuprofen when she had problems, and suggested that if she could loose some weight that would help her. Dr. Burnside did not feel Plaintiff had enough problems to consider surgery. It was Dr. Burnside's clinical impression of Plaintiff that "she should get training so that she does not have to make a living standing on her feet or doing any manual labor. Beyond that she can participate in all activities." (*See* Tr. 128-29).

On September 22, 2003, Plaintiff was examined by Dr. James Roth.  Dr. Roth determined that while Plaintiff suffered from mild arthritis of the right hip, she had no impairment that would limit her physically. (Tr. 278).

Plaintiff was evaluated by Dr. Schwartz on July 6, 2004.  Dr. Schwartz diagnosed Plaintiff with left knee arthritis, left knee patella chrondromalacia, and a clinical left knee medial meniscus tear.  (Tr. 341).  A magnetic resonance imaging ("MRI") ordered by Dr. Schwartz revealed a small osteochondral defect in the lateral femoral condyle.  (Tr. 338).  On physical exam, Plaintiff was tender about the lateral femoral condyle areas, as well as the medial femoral condyle.  It was noted she had poor range of motion of the knee.

An x-ray of Plaintiff's right hip was performed on August 2, 2004.  (Tr. 336).  The x-ray revealed deformity of the right femoral head neck, which was determined to be old trauma, with no evidence of acute fracture or dislocation.  (*Id*.).  The x-ray also revealed some minor degenerative changes.  (*Id*.).

In addition, an arthroscopy was ordered on Plaintiff's left knee.  During a follow-up appointment with Dr. Schwartz on August 9, 2004, it was noted that Plaintiff was non-weight bearing status at that time, and stated she was in a lot of pain and needed a refill of her pain medication.  Plaintiff was given a renewed prescription for Percocet, told to continue with her present care, and to follow-up with Dr. Schwartz in one week.  (Tr. 335).  On September 1, 2004, Plaintiff was again seen by Dr. Schwartz for a follow-up appointment.  Dr. Schwartz's notes indicate Plaintiff had full range of motion of the knee and ambulated bearing weight on the knee but with a mild limp.  Plaintiff requested a refill of her pain medication.  Dr. Schwartz noted "at this time it is

felt necessary to start dosing her down from the Percocet." Plaintiff was given a prescription for Lortab with no refills.

In September 2004, Plaintiff was diagnosed with Legg-Calve-Perthes of the right hip. (Tr. 328, 331). During an appointment with Dr. Schwartz on October 29, 2004, he discussed with Plaintiff the need for a hip replacement sometime in the future, but suggested that she postpone as long as possible. (Tr. 328). Examination of Plaintiff's left knee showed that she was in a very good healing state without signs of infection, and that the knee had full range of motion without tenderness to palpation. Upon examination of Plaintiff's right knee, it was determined that she suffered from osteoarthritis of the right knee. Plaintiff was instructed to continue with her present care and was given a note to return to work (she had requested to be returned to work) no more than twenty hours per week. (*Id.*).

Dr. Michael Watterson performed an evaluation of Plaintiff's arthritis on October 22, 2004. (Tr. 389, 392). Dr. Watterson diagnosed Plaintiff as having degenerative arthritis with some osteoarthritis in the hips and knees. (Tr. 390-91). Dr. Watterson also noted that Plaintiff had myofascial pain due to osteoarthritis, for which Plaintiff was prescribed medication. (Tr. 391). In a letter dated November 19, 2004, it was Dr. Watterson's impression that Plaintiff had (1) osteoarthritis, particularly in her knees, and (2) fibromyalgia, but Dr. Watterson doubted she had a connective tissue disease such as rheumatoid arthritis or lupus. (Tr. 388).

On November 29, 2004, Dr. Thomas Pettigrew, EdD, evaluated Plaintiff, diagnosing her with adjustment disorder with depressed mood. (Tr. 304). When describing her daily activities to Dr. Pettigrew, Plaintiff reported that she required no assistance in caring for herself or her children, she drove for herself, and did all of her housework, laundry, grocery shopping, and financial

management. (*Id.*). Dr. Pettigrew opined that Plaintiff's cognitive function capabilities would allow her to manage disability funds. (Tr. 305).

Plaintiff underwent a psychiatric evaluation with Dr. Laura D'Angelo at Centerstone Community Mental Health Center on August 23, 2005. (Tr. 347-80). Dr. D'Angelo diagnosed Plaintiff with major depressive disorder, single episode, severe without psychotic features and prescribed medication. (Tr. 356).

On February 16, 2006, Plaintiff underwent right total hip arthroplasty, which was performed by Dr. Craig Morrison. (Tr. 407). Follow-up visits indicated the arthroplasty was successful, with minor post-operative arthritis. (Tr. 394-97).

On August 7, 2006, Dr. Watterson performed an assessment of Plaintiff's physical capabilities. (Tr. 409-11). Dr. Watterson concluded that Plaintiff has osteoarthritis and fibromyalgia. (Tr. 410). Dr. Watterson also completed a medical source opinion of Plaintiff and opined that she could: sit for two hours at one time and for a total of two hours in an eight hour day; stand for two hours at one time and for a total of two hours in an eight hour day; and walk for two hours at one time and for a total of two hours in an eight hour day. (*Id.*). Dr. Watterson further reported that Plaintiff could: occasionally lift and carry less than five pounds; occasionally bend, kneel, crawl, and climb; occasionally reach overhead, stoop, kneel, crouch; and use the right arm to push/pull. (*Id.*). Dr. Watterson determined that Plaintiff would be limited in her activities because of pain and fatigue, and during a thirty day work period, she could be expected to be absent from work 0-2 times because she is unable to participate in work activities as a result of her pain, and during an eight hour work day, she would be unable to participate in work activities 1-2 times as a result of fatigue. (Tr. 411).

**II.     ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*   First, the Commissioner determines whether the claimant is working.   Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.   Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.   Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work.   The claimant's RFC consists of what the claimant can do despite her impairment.   Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.   In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.   If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 11, 2005, her (amended) alleged onset date of disability. (Tr. 14).   The ALJ determined that Plaintiff

has the severe impairments of osteoarthritis, degenerative joint disease, and major depressive order. However, the ALJ determined that these impairments do not meet or equal any impairment listed in Appendix 1 to Subpart P, 20 CFR, Part 404.  (Tr. 16, 18).  According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their intensity, persistence, and limiting effects were not fully credible.  It was the ALJ's finding that although Plaintiff is unable to perform any past relevant work, she is capable of performing limited to unskilled, sedentary work.  The ALJ found that Plaintiff retains the RFC to perform the exertional demands of sedentary work which allows lifting of no more than ten pounds at a time, sitting six hours per day, and sitting and walking no more than two hours per day.  (Tr. 18).  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 20).

At the hearing, the ALJ called a vocational expert ("VE") to testify who was familiar with Plaintiff's background.  (Tr. 423-24, 444-45).  The VE testified that Plaintiff's past relevant work as a food delivery worker and fast food worker were classified as unskilled, in the intensity categories medium and light, respectively.  (Tr. 423).  The VE also testified that Plaintiff's past relevant work as a telemarketer was classified as semiskilled and required sedentary exertion.  (*Id*.). The VE stated that these jobs imparted Plaintiff with no transferable job skills.  (Tr. 444).  When asked to consider Plaintiff's age, education, work experience, and assigned RFC, the VE opined that Plaintiff could perform sedentary, unskilled work.  (Tr. 444).  Based on the VE's testimony and his assessment of Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing simple, unskilled sedentary work, lifting no more than ten pounds at a time, sitting approximately six hours per day, and sitting and standing no more than two hours per day.  (Tr. 18).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed and benefits awarded, or in the alternative, remanded to a new ALJ for further consideration.  (Doc. #1 at 2).  Plaintiff asserts two reasons why this court should grant the relief sought: (1) the ALJ abused his authority in failing to properly apply SSR 99-2p. in evaluating the severity of Plaintiff's fibromyalgia, and (2) the ALJ failed to properly evaluate the effect of obesity on Plaintiff's severe impairments of osteoarthritis and degenerative joint disease when determining Plaintiff's RFC.

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42, U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (other citations

omitted).   If supported by substantial evidence, the Commissioner's factual findings must be

affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894

F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in

scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at

701.

**V.      Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments

for reversal and remand.  For the reasons outlined below, the court finds that the ALJ relied on

substantial evidence and applied the proper legal standards.

**A.      The ALJ's Review of the Fibromyalgia Component of the Claim Was Proper and Adequate.**

Plaintiff argues that the ALJ failed to give Dr. Watterson's diagnosis of myofascial pain

proper weight, and thus, did not evaluate the severity of Plaintiff's fibromyalgia.  (Pl. Mem. 9-12).

The ALJ's decision, however, shows that he gave proper weight to Plaintiff's diagnosis, thereby

making an evaluation of the severity of Plaintiff's alleged impairment unnecessary. (Tr. 14-21). The

ALJ found that Dr. Watterson's treatment notes failed to document objective findings which are

recognized as indicative of fibromyalgia but that he did describe significant limitations related to

fatigue.  (*Id.*).   However, the ALJ found Dr. Watterson's description of these limitations was

inconsistent with what Plaintiff described as her activities to Dr. Pettigrew.  Thus, in evaluating the

evidence, the ALJ found that the diagnosis of fibromyalgia proffered by Dr. Watterson not only

lacked substance, but was also based on symptoms contrary to those described by Plaintiff in an

examination performed by Dr. Pettigrew one month *after* Dr. Watterson's evaluation.  (Tr. 14-21,

301-05).  The ALJ concluded, therefore, that Dr. Watterson's assessment is based on a diagnosis of

fibromyalgia, and that diagnosis is not well supported.

Dr. Watterson's own treatment records show that, in November 2004, he found no myofascial

tender points.  (Tr. 387-89, 391).  Moreover, an earlier examination of Plaintiff by Dr. Roth revealed

only mild arthritis of the right hip with no physical limitations.  (Tr. 276-79).  Thus, the ALJ, after

evaluating the medical evidence of record, concluded that Plaintiff could perform sedentary work.

(Tr. 18-20).    In reaching this conclusion, the ALJ considered the evidence, including the

documentary evidence and Plaintiff's testimony, and concluded that Plaintiff's statements concerning

her impairments and their impact of her ability to work were not totally credible.  (*Id.*).  The ALJ's

findings are supported by substantial evidence.

B.    **The ALJ's Review of the Obesity Component of the Claim Was Proper and Adequate.**

Plaintiff also argues that her obesity inhibits her ability to work and that the ALJ failed to

consider that argument.  (Pl. Mem. 12-13).  Specifically, Plaintiff argues that she has movement

restrictions imposed on her due to her obesity.  A review of the ALJ's decision, however, shows that

the ALJ properly evaluated Plaintiff's impairments, including obesity.  (Tr. 14-21).

An ALJ is called upon to "make specific and well-articulated findings as to the effect of the

combination of impairments and to decide whether the combined impairments cause the claimant

to be disabled."  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  There is no "rigid

requirement" that the ALJ refer to every piece of evidence as long as the decision allows the court

to conclude that the ALJ considered the claimant's medical condition as a whole.  *Hennes v. Comm'r*

*of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 348 (11th Cir. 2005) (citing *Dyer v. Barnhart*, 395 F.3d

1206, 1211 (11th Cir. 2005). Here, the ALJ correctly determined that the evidence as a whole fails to confirm disabling limitations arising from Plaintiff's obesity. That the ALJ properly considered obesity in making his determination is evidenced by his finding that Plaintiff's mere diagnosis of obesity did not equal a finding of severity. (Tr. 16). Although Plaintiff did establish in the medical record that she was obese (weight: 261 pounds, height: 5'5"), there was no evidence (or, at a minimum, insufficient evidence) presented to suggest that her obesity further affected her RFC. And this is the case even considering Plaintiff's own testimony. The ALJ found that Plaintiff's "limitation to unskilled work would not restrict the claimant's capacity to perform the full range of entry level jobs." (Tr. 21). Thus, the court finds no error in the ALJ's determination. The ALJ properly considered obesity as it relates to Plaintiff's ability to sustain regular and continuing work, and his findings are supported by substantial evidence.

## VI.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____23rd_____ day of September, 2009.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE